# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BERYL ELIZABETH HARTSHORN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-1430-D |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Beryl Elizabeth Hartshorn, seeks judicial review of the Social Security Administration's denial of disability insurance benefits and supplemental security income benefits. United States District Judge Timothy D. DeGiusti has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I.     Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on October 17, 2012, alleging a disability onset date of October 1, 2011. The Social Security Administration denied the applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 13], 15-28. The Appeals Council denied Plaintiff's request for review. AR 2-5. This appeal followed.

**II.    The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential

evaluations process); *see also* 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 1, 2011.[1] AR 17. At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc of the lumbar spine, Baker's cyst on right knee, mild vascular insufficiency of the left tibial artery, hepatitis C, and obesity. AR 18. At step three, the ALJ found that none of Plaintiff's impairments meets or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that she can occasionally lift and/or carry ten pounds and frequently lift and/or carry ten pounds. She can stand and/or walk at least two hours in an eight-hour workday and sit at least six hours in an eight-hour workday.

AR 18-19. At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a "nurse aide," which she performed at the medium exertional level, or "medical assistant," which she performed at the light exertional level. AR 27. At step five, the ALJ relied on the testimony of a vocational expert (VE), and found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform including reel assembler and circuit board assembler, both of which are sedentary jobs. AR 28. Thus, the ALJ found at the final step of the sequential evaluation that Plaintiff is not disabled for purposes of the Social Security Act. *Id*.

---

[1] Although Plaintiff worked after her alleged disability onset date, the ALJ determined her work did not rise to the level of substantial gainful employment.

### III. Plaintiff's Claims

Plaintiff asserts the following claims of error: (1) the ALJ erred as a matter of law in failing to properly evaluate Plaintiff's obesity; and (2) the ALJ erred as a matter of law by failing to properly evaluate Dr. Kempe's medical opinion regarding Plaintiff's need to elevate her legs.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. Analysis

### A. The ALJ's Evaluation of Plaintiff's Obesity

At step two of the sequential evaluation process, the ALJ identified Plaintiff's obesity as a "severe impairment." AR 18. Although there is no specific Listing for obesity in the Listing of Impairments, Social Security Ruling 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002) (Titles II & XVI: Evaluation of Obesity) requires an ALJ to consider the effects of obesity throughout the sequential evaluation process. The ruling instructs that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* Nevertheless, an ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but rather, must "evaluate each case based on the information in the case record." *Id.* at *6.

The decision at issue demonstrates the ALJ's understanding of his duty to consider and evaluate the effects of Plaintiff's obesity. The ALJ stated he had "taken the claimant's obesity (or morbid obesity) into consideration along with its potential risks, limitations, restrictions and co-morbidities." AR 18. The ALJ also specifically stated that he had considered "whether there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id.* Ultimately, however, the ALJ concluded none of Plaintiff's impairments, singly or combined with the effects of obesity, meets the requirements of a Listed impairment. *Id.*

Plaintiff contends the ALJ's discussion of Plaintiff's obesity was legally insufficient. According to Plaintiff, a proper consideration of her obesity "in conjunction with her other 'severe' liver, knee, back, and vascular impairments," *could* have led "a reasonable adjudicator" to find her testimony regarding her limitations credible. Pl. Brief at p. 14 (emphasis added).

4

Had her testimony been deemed credible, Plaintiff theorizes, the ALJ would have found her incapable of performing even sedentary work. *Id.*[2]

Plaintiff's theory presupposes that "significant obesity" always exacerbates symptoms arising from existing impairments; in her case, degenerated spine, Baker's cyst on her knee, leg pain and swelling, and fatigue. *Id.* But an ALJ may not make such an assumption in the case of every obese claimant. As the Tenth Circuit Court of Appeals recently found, "the ALJ may 'not make assumptions about the severity or functional effects of obesity combined with other impairments' but instead must 'evaluate each case based on the information in the case record.'" *Smith v. Colvin*, No. 15-6001, 2015 WL 5315660, at *2 (10th Cir. Sept. 14, 2015) (quoting SSR 02-1p, 2002 WL 34686281, at *6). Moreover, when no evidence supports a finding of additional functional limitations caused by a claimant's obesity, the ALJ is not required to specifically note the absence of such evidence when formulating the claimant's RFC. *Smith* at *2. In this case, the ALJ's consideration of Plaintiff's obesity was legally sufficient.

### B. Evaluation of Dr. Kempe's Medical Opinion

Plaintiff contends the ALJ erred in his evaluation of Dr. Kempe's medical opinion and the weight afforded that opinion.[3] Records from Dr. Kempe are scant as he attended Plaintiff only twice. After his initial examination of Plaintiff on November 7, 2013, Dr. Kempe wrote a three-sentence letter, "To Whom It May Concern," stating, "Pt. should keep her legs elevated for

---

[2] Plaintiff testified that she can work no more than two hours per day before she becomes exhausted. AR 67. She testified that she has no energy and wakes up exhausted. AR 69. She further testified that, unless she keeps her legs elevated above the level of her heart for one hour three times per day, her legs swell and exhibit small, broken blood vessels. AR 72.

[3] The actual issue is whether it is medically necessary for Plaintiff to elevate her legs above the level of her heart three times per day for one hour each time, in order to avoid swelling and pain. If such a treatment were medically necessary, it is reasonable to assume Plaintiff's ability to perform even sedentary work would be impacted.

one hour 3 times per day. Should sleep with her legs elevated at night. OK to place warm compresses on legs for pain." AR 960.

Plaintiff had been referred to Dr. Kempe by Lisa Noe, P.A. AR. 1082. At the direction of Ms. Noe, Plaintiff had undergone a duplex artery Doppler ultrasound of the left lower extremity on October 25, 2013. The radiologist's impression was moderate arterial occlusive disease within the trifurcation vascular below the knee. AR 958. In the January 16, 2014 medical record generated at Plaintiff's second visit, Dr. Kempe stated that Plaintiff's symptoms were, if anything, "possibly" related to venous insufficiency, but not arterial insufficiency. AR 1082. Dr. Kempe noted the more recent Doppler arterial study showed improvement in her arterial waveforms and that her diagnosis had been "referred to as mild disease in the left anterior tibial artery and no other specific arterial disease noted." *Id.* Dr. Kempe included in the record his opinion that Plaintiff's pain might actually be attributable to chemotherapy-related neuropathy because Plaintiff "does not seem to have any clinically significant degree of arterial insufficiency[,] and she has palpable dorsalis pedis pulse on the left side. *Her symptoms are not related to vascular insufficiency.*" AR 1083 (emphasis added). Dr. Kempe's comments, in the January 16, 2014 medical record, regarding elevation of Plaintiff's legs, are confusing because of a typographical error. *Id.* But in a letter addressed to Plaintiff's attorney dated May 22, 2014, Dr. Kempe clarified his comments:

> I believe in my report that day [January 16, 2014], there was a typographical error in that my impression would be that I told her that *if it has helped*[,] that she should continue with elevation of her lower extremities, but, if she does not think there is any ongoing benefit and that is not helping her symptoms, it would be unnecessary to continue that.

AR 1101 (emphasis added). Dr. Kempe did acknowledge that Plaintiff's elevation of her legs above her heart should "relieve any venous pooling, which in some cases such as hers can

alleviate symptoms pretty well." *Id.* But Dr. Kempe did not state that "venous pooling" was the cause of Plaintiff's leg pain and swelling.

As Plaintiff notes, an ALJ must consider and evaluate every medical opinion in the record. Pl. Brief at p. 16. Suggested factors in the regulations include the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the extent to which the medical source's opinions are supported by medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the specialization of the treating source; and other factors. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c).

In this case, the ALJ thoroughly discussed Dr. Kempe's opinions and gave them "some weight." AR 25. The ALJ explained he was giving the opinion diminished weight because Dr. Kempe's opinions regarding the possible need for Plaintiff to elevate her legs was actually based only on Plaintiff's own subjective report of pain and the efficacy of the treatment. *Id.* The ALJ concluded "[t]he objective medical evidence does not show the problems with [Plaintiff's] lower extremities are this severe." AR 25-26.

The ALJ's discussion of Dr. Kempe's opinions and the reasons for the weight afforded those opinions are sound. The objective medical evidence does not, in fact, support the alleged severity of Plaintiff's subjective claims.

## RECOMMENDATION

In sum, the ALJ's decision reflects sufficient consideration of Plaintiff's obesity. Moreover, the ALJ did not commit legal error in discussing and weighing the opinions of Dr. Kempe. Thus, it is recommended that the Commissioner's final decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by the 11th day of December, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 20th day of November, 2015.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE